**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JAMES E. BUCHANAN and ) <br> JAMES E. BUCHANAN ELECTRIC, INC., ) <br>     Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> RPM ADVANTAGE, INC., ) <br> RESOURCE PROTECTION MANAGEMENT, LP, ) <br> B. ALLEN FLETCHER, ) <br> L. MYCHAL JEFFERSON, II, and ) <br> LMJ HOLDINGS, INC., ) <br>     Defendants. ) <br> ) | **CIVIL ACTION** <br> **NO. 07-40190-TSH** |

**MEMORANDUM OF DECISION**
**March 31, 2010**

**HILLMAN, M.J.**

### Nature of the Proceeding

By consent of the parties this case has been referred to me for all further proceedings, including trial, and order for entry of a final judgment in accordance with the provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73(b). This Memorandum of Decision addresses the Plaintiffs' Partial Motion [sic]. For Summary Judgment (Docket No. 97), in which Plaintiffs seek summary judgment as to Counts VIII and X of their Second Amended Complaint.

### Nature of the Case

James E. Buchanan ("Buchanan") and James E. Buchanan Electric, Inc. ("Buchanan Electric") (collectively, "Plaintiffs") have filed a Second Amended Complaint (Docket No. 69)

against RPM Advantage, Inc. ("RPM Advantage"), Resource Protection Management, LP ("RPM, LP"), B. Allen Fletcher ("Fletcher"), L. Mychal Jefferson, II ("Jefferson"), and LMJ Holdings, Inc. ("LMJ")[1] alleging claims for: Fraud and Fraud in the Inducement- Fletcher (Count I); Unjust Enrichment-RPM, LP (Count II); Fraudulent Transfer-Fletcher and RPM, LP (Count III); Pierce the Corporate Veil- Fletcher (Count IV); Breach of Contract- RPM Advantage (Count V); Breach of Good Faith and Fair Dealing-RPM Advantage (Count VI); Negligent Misrepresentations-Jefferson (Count VII); Fraud- Jefferson (Count VIII); Alter-Ego-Jefferson (Count IX); and Violation of Mass.Gen.L. ch. 110A, *et seq.* (Count X).

## Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (internal citation omitted)).

The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Sensing*, 575 F.3d at 153. "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving

---

[1] A stipulation of dismissal has been filed as to Fletcher, *see* Docket No. 93, and an Agreement for Judgment (Docket No. 94) has been filed with respect to RPM, LP. Therefore, "Defendants" as used herein, shall collectively refer to RPM Advantage, Jefferson and LMJ.

2

party must come forward with facts that show a genuine issue for trial." *Id.* (citing *Carroll*, 294 F.3d at 236). These facts must not be merely allegations or denials of the moving party's pleadings. *Id.* Both "[c]onclusory allegations [and] improbable inferences" are insufficient to overcome summary judgment. *Sensing,* 575 F.3d at 153 (citing *Carroll*, 294 F. 3d at 236-37 (internal quotations omitted). "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Sensing* 575 F.3d at 153 (citations omitted).

### Facts Relating To Counts VIII and X

On February 24, 2006, Jefferson sent correspondence to Buchanan on RPM, LP letterhead in which he was identified in the header as an "Agent" of Hamerschlag Dodeles, LLC ("Hamerschlag"). *Statement of Material Facts In Sup. Of Pls' Partial Motion [sic.] For Sum. J.* (Docket No. 99)("*Pls' Facts"*), at ¶4. On March 13, 2006, Jefferson sent Buchanan correspondence on Hamerschlag letterhead, which he signed as "Chairman" of Hamerschlag. *Id.*, at ¶3 and Ex. 2. *Id.*

During the relevant time periods, Jefferson was not the chairman of Hamerschlag. Hamerschlag was a limited liability corporation and did not have a board of directors. At the time, Jefferson owned twenty percent (20%) of the parent company of Hamerschlag and had agreement to acquire the remaining eighty percent (80%) upon the approval of the American Stock Exchange ("AMEX"). *Defs' Statement of Controverted Facts* (Docket No. 125)(*"Defs' Controv. Facts")*, at ¶4 During the months of February through June 2006, Jefferson advised Buchanan of his relationship to Hamerschlag and told him the company had no official chairman. *Id.*

In the letter of February 24, 2006, Jefferson offered to purchase Buchanan Electric. Buchanan Electric was to receive commons shares of RPM Advantage worth $17,000,000. *Pls' Facts*, at ¶6. RPM Advantage did not exist as of February 24, 2006. *Id.*, at ¶8.[2] Jefferson held himself out to be an agent for RPM Advantage. *Id.*, at ¶9. The parties were aware that at the time, RPM Advantage was not a publicly traded company. *Defs' Controv. Facts*, at ¶9.

On or about March 17, 2006, Jefferson received an audit of RPM, LP, which showed that there was some "doubt" about the company's ability to continue operations. *Pls' Facts*, at ¶11. The audit also noted that the future success of the company was dependent upon the development of new security technology and that the company was in the process for applying for a process patent for this new technology. *Defs' Controv. Facts*, at ¶11.

In April 2006, RPM LP merged with Communitronics America, Inc. to become RPM Advantage. *Pls' Facts*, at ¶12.

On May 4, 2006, Buchanan, personally and on behalf of Buchanan Electric, entered into a "Definitive Purchase & Sale Agreement and Agreement and Plan of Reorganization"[3] to sell Buchanan Electric to RPM Advantage for one million shares of RPM Advantage stock valued at $17 per share. *Pls' Facts*, at ¶13.[4] The Agreement provided that Buchanan was to exchange his shares of common stock in Buchanan Electric for shares in RPM Advantage stock. *Defs'*

---

[2] The remainder of the facts asserted in *Pls' Facts*, ¶8 are embellishments which are not supported by the citation to the record.

[3] A copy of the "Definitive Purchase & Sale Agreement and Agreement and Plan of Reorganization" ("Agreement") is attached as *Ex. 2* to *Defs' Controv. Facts*.

[4] Although Defendants dispute this fact, they do so in Paragraph 12 of their controverted facts, rather than ¶13. *See Defs' Controv. Facts*, at ¶12. Furthermore, Defendants, citing to the Affidavit of L. Mychal Jefferson, attached as *Ex. 1* to *Defs' Controv. Facts* ("*Jefferson Aff.*"), assert that RPM Advantage declined to complete the transaction due to growing concerns of the financial viability from Buchanan Electric. While this fact could possibly be inferred from the *Jefferson Aff.*, it is not actually stated therein.

*Controv. Facts*, at ¶14.  Furthermore, the Agreement defined the exchange as "a reorganization under the provisions of section 368(a)(1)(B) of the United States Internal Revenue Code" and stated that the "[e]xchange shall qualify as a transaction in securities exempt from the registration or qualification under the Securities Act of 1933, as amended, and under the securities laws of each state or jurisdiction where [Buchanan] resides." *Id.*  Jefferson explained his business relationship with Hamerschlag to Buchanan prior to signing the Agreement. *Defs' Controv. Facts*, at ¶15.

At all times material hereto, Jefferson was not licensed to sell or offer for sale securities in the Commonwealth of Massachusetts. *Pls' Facts*, at ¶16. On January 31, 2009, Buchanan, through counsel, tendered his shares to Jefferson. *Id.*, at 17. Jefferson has not responded to the tender. *Id.*, at ¶18.

Prior to signing the Agreement, Jefferson represented to Buchanan that RPM, LP was a merged entity with RPM Advantage that possessed valuable technology and simply needed reorganization access to markets available to Buchanan Electric and qualified people to move forward with a profitable business plan. [5] *Pls' Facts,* at ¶19.

At the time, Buchanan Electric was suffering from serious financial losses. RPM Advantage failed to tender payment to Buchanan Electric when it learned of Buchanan Electric's financial situation. *Defs' Controv. Facts*, at ¶20.[6]

---

[5] The Defendants dispute this fact, but the facts which they allege are controverted do not directly dispute the Plaintiffs' statements. However, I will accept Defendants' assertion that on May 4, 2006, Buchanan Electric was in dire financial straights and the inference that Buchanan would have signed the Agreement regardless of RPM Advantage's financial situation.

[6] Defendants are reminded that when citing to exhibits in support of a factual assertion, they are required to cite to the specific pages of the exhibit which support the assertion, not the exhibit in general.  Defendants did cite to specific page numbers in *Defs' Statement Of Facts In Opp. To Mot. For Partial Summary Judg.* (Docket No. 130), which was of assistance to Court.

**Discussion**

*Whether Plaintiffs Are Entitled To Summary Judgment With Respect To Their Claim Against Jefferson for Fraud/Fraud In The Inducement*

Plaintiffs have moved for summary judgment on their fraud claim against Jefferson on the grounds that he knowingly misrepresented that he was the Chairman of the Board of Hamerschlag in order to induce them to enter into the Agreement and that they relied on his representation to their detriment. See *Chan v. Chen*, 70 Mass.App.Ct. 79, 872 N.E.2d 1153(2007)(to prevail on fraud claim or deceit, plaintiff must prove defendant has knowingly made false statement of material fact, intending that plaintiff rely thereon, and upon which plaintiff did rely). A protracted discussion of this argument is not necessary. Jefferson, citing his sworn affidavit, has asserted that although he referred to himself as "chairman" of Hamerschlag, he had explained to Buchanan what his actual relationship to the company was before they signed the Agreement. Since I am required to view the facts in a light most favorable to Jefferson, as the non-moving party, I find that there is a genuine issue of material fact which precludes the entry of summary judgment on this claim.[7]

*Whether Plaintiffs Are Entitled To Summary Judgment With Respect To Their Claim Against Defendants for Violation of Mass.Gen.L. ch. 110A*

Plaintiff argues that Defendants violated Mass.Gen.L. ch. 110A, §410(a)(2) when Jefferson misrepresented himself as chairman of the board of Hamerschlag in relation to the sale of RPM Advantage securities to Buchanan in exchange for Buchanan's company, Buchanan Electric. Plaintiffs further argue that Defendants violated Section 410(a)(2) by failing to provide

---

[7] I have found that there is a genuine issue of material fact as to whether Plaintiffs reasonably relied on Jefferson's holding himself out as the chairman of Hamerschlag given that Jefferson had informed them of his actual relationship to Hamerschlag. Therefore, it is not necessary for me to address whether Plaintiffs' reliance would have been reasonable if Jefferson had not informed Buchanan of his actual relationship to Hamerschlag, or whether Plaintiffs would have entered into the Agreement if Jefferson had not misrepresented his position.

Buchanan with the audited financial statements of RPM Advantage, which would have revealed that the stock being offered in exchange for Buchanan Electric was "doubtful (at best) given the poor financial condition of its sole operating subsidiary, [RPM, LP]." *Pls' Mem. In Sup. Of Their Partial Motion [sic.] For Summary Judg.* (Docket No. 98), at p. 7.  Defendants argue that the proposed transaction between Plaintiffs and RPM Advantage was not a sale of securities within the meaning of Mass.Gen.L., ch. 110A and therefore, summary judgment with respect to this claim must be denied.  In the alternative, Defendants essentially argue Plaintiffs' motion must be denied because they made no material untruths or omissions in relation to the proposed transaction.

Section 410 provides, in relevant part, that:

(A) Any person who

>   ....
>
>   (2)  offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six per cent per year from the date of disposition.

Mass.Gen.L., ch. 110A, §410(a)(2).

Assuming without deciding that the transaction in question fell within Chapter 110A, Plaintiffs are not entitled to summary judgment with respect to this claim. First, there is a genuine issue of material fact as to whether Plaintiffs were aware of Jefferson's actual relationship to Hamerschlag at the time that they entered into the Agreement, precluding summary judgment on this ground. Second, as to Plaintiffs' claim that Defendants' failure to inform them of RPM Advantage's true financial situation was an omission of a material fact which made the value of the transaction to Plaintiffs misleading, there is a genuine issue of material fact as to whether the Plaintiffs, exercising reasonable care, could have known the truth about RPM Advantage's financial situation.[8] *See Marram v. Kobrick Offshore Fund, Ltd.,* 442 Mass. 43, 809 N.E.2d 1017 (2004)(defendant not liable under Section 410(a)(2) if knew or in exercise of reasonable care could not have known of untruth or omission). Given Buchanan Electric's own financial situation, there is also be a genuine issue of material fact ast to whether the omission was "material". Therefore, Plaintiffs' motion for summary judgment on this ground is denied.

## Conclusion

Plaintiffs' Partial Motion [sic]. For Summary Judgment (Docket No. 97) is ***denied***.

/s/Timothy S. Hillman
TIMOTHY S. HILLMAN
U.S. MAGISTRATE JUDGE

---

[8] Indeed, the February 24, 2006 letter of intent provided that prior to entering into the Agreement, Plaintiffs would "be permitted to undertake a due diligence search and review audited statements and related supporting data of [Resource Protection Management, Inc. And or its designee]" *Defs' Controv. Facts*, *Ex. 3*, at p. 3.